JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| None | | None |

**Proceedings:** IN CHAMBERS – COURT ORDER

On November 18, 2022, defendant AmTrust Financial Services, Inc. ("Defendant") filed a Notice of Removal alleging that this Court possesses jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.

Plaintiff Alejandro Cervantes-Arnold's ("Plaintiff") Complaint, filed on behalf of himself and similarly situated employees, alleges the following causes of action against Defendant and Does 1 to 100:  (1) declaratory relief; (2) failure to pay overtime wages for daily overtime worked in violation of California Labor Code ("Labor Code") sections 510 and 1194; (3) failure to authorize or permit meal periods in violation of Labor Code sections 512 and 226.7; (4) failure to authorize rest periods in violation of Labor Code section 226.7; (5) failure to indemnify employees for employment-related losses/expenditures in violation of Labor Code section 2802; (6) failure to timely pay earned wages during employment in violation of Labor Code section 204; (7) failure to provide complete and accurate wage statements in violation of Labor Code section 226; (8) failure to timely pay all earned wages and final paychecks due at time of separation of employment in violation of Labor Code sections 201, 202, and 203; and (9) unfair business practices in violation of California Business and Professions Code sections 17200, et seq.

On November 23, 2022, the Court issued an Order to Show Cause stating, in part:  "Upon initial review, Defendant's Notice of Removal appears to be deficient because it contains unsupported assumptions.  Defendant does not present facts to support each of the assumed violation rates used in Defendant's calculations of the amount in controversy."  (Docket No. 10 at p. 2.)  Accordingly, the Court required Defendant to show cause, in writing, "why this case should not be remanded for lack of subject matter jurisdiction because Defendant has failed to show, by a preponderance of the evidence, that the amount in controversy requirement for CAFA jurisdiction has been met."  (Docket No. 10 at pp. 2–3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

Defendant filed its Response to the Order to Show Cause on December 12, 2022 ("Response"). (Docket No. 13.) Notably, Defendant does not support its Response with any new evidence. Rather, Defendant merely cites to the Declaration it previously filed in support of its Notice of Removal, which the Court previously noted was insufficient to support the CAFA amount in controversy. (See generally Docket Nos. 1-4, 10.)

Federal courts are courts of limited jurisdiction, having subject matter jurisdiction only over matters authorized by Congress and the Constitution. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). A removed action must be remanded to state court if the federal court lacks subject matter jurisdiction. Id. § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." Prize Frize, Inc. v. Matrix (U.S.) Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Federal subject matter jurisdiction may be based on diversity of citizenship pursuant to CAFA. See 28 U.S.C. § 1332(d)(2). The party seeking federal subject matter jurisdiction under CAFA must show that at least one plaintiff and one defendant are citizens of different states, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs. Id. "[T]he burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam). "The notice of removal 'need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold,' and need not contain evidentiary submissions." Fritsch v. Swift Transp. Co. of Ariz., LLC, 899 F.3d 785, 788 (9th Cir. 2018) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 82 (2014)). However, "[i]f the amount in controversy is not clear from the face of the complaint, 'the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." Id. at 788–89 (quoting Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015)). "Along with the complaint, [courts] consider allegations in the removal petition, as well as 'summary-judgment-type-evidence related to the amount in controversy at the time of removal.'" Id. at 793 (quoting Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." Ibarra, 775 F.3d at 1197. "[A] damages assessment may require a chain of reasoning that includes assumptions," but "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them." Id. at 1199.

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

In its Response, like in the Notice of Removal, Defendant separately alleges the amount in controversy for most of Plaintiff's claims, and combines those to allege a total amount in controversy of $5,214,699.86 without attorneys' fees, and $6,518,374.82 with attorneys' fees. (Docket No. 13 at p. 20.) There are three, primary problems with manner in which Defendant calculates the amounts in controversy.

The first problem is Defendant's reliance on Plaintiff's allegation in the Complaint that Defendant had a policy, practice, and/or procedure of misclassifying class members as "exempt" to argue that, therefore, every class member could not have been compensated for any overtime hours worked, meal period premiums, rest period premiums, etc. (See, e.g., Docket No 13 at pp. 9–10; Docket No. 1 at p. 10–13, 18.) Defendant then uses this assumption to justify yet another assumption that calculating the amount in controversy based on one hour of uncompensated overtime, one uncompensated meal period, one uncompensated rest period per week per class member, etc., is "conservative." With these unsupported assumptions, Defendant, for instance, calculates the amounts in controversy for Plaintiff's unpaid overtime, meal period, and rest period claims as $1,340,249.44, $893,499.63, and $893,499.63, respectively.

In Akana v. Estee Lauder, Inc., the Court found Defendants' estimated violation rate of one noncompliant meal break and one noncompliant rest break per week per employee was not supported by the evidence. 19-cv-00806, 2019 WL 2225231, at *6 (C.D. Cal. May 23, 2019). Defendants argued that the language in the Complaint supported "an assumed high violation rate because it [was] alleged that 'Defendants had a policy or practice of not providing' meal and rest periods." Id. at 7. The Court however, found that, as in Ibarra, Defendants "relied on an assumption rate of its alleged labor law violations that was not grounded in real evidence," despite having the burden of proof as to the amount in controversy. Id. (citing Ibarra 775 F.3d at 1198). In Akana, the Court noted that the allegations in Ibarra also concerned those as to a "pattern and practice." Nevertheless, Ibarra held that to support a claim as to the amount in controversy, the defendant must present evidence, not bare assumptions, as to the violation rate, and relying on this type of language in the complaint was insufficient. Id.[1]

---

[1] See also Toribio v. ITT Aerospace Controls LLC, 19-cv-5430, 2019 WL 4254935, at *2 (C.D. Cal. Sept. 5, 2019) ("As is true in many such [wage-and-hour cases], Aerospace has attempted to read the vague tea leaves strewn about by Plaintiff in the Complaint, which in this instance is based upon Plaintiff's allegations of a 'pattern and practice' of various violations. From those meager offerings, Aerospace has attempted to supply violation rates . . . of one meal break violation and one rest break violation per week. . . . What Aerospace cannot do is simply pull violation rates out of thin air, . . . and conclusively state that they are 'reasonable

JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

    Defendant's amount in controversy calculations are based on unsupported, assumed violation rates. The language in the Complaint and Defendant's Declaration filed in support of the Notice of Removal do not support Defendant's assumption that the Complaint seeks damages based on a theory that Defendant did not compensate all sub-class members for one hour of overtime, one meal period, one rest period, etc. Rather, for instance, the Complaint could be alleging that Defendant failed to compensate for overtime in the amount of thirty seconds per week, one minute per week, five minutes per day, etc. There is no reasonable basis upon which Defendant assumes one hour per week, one meal period, one rest period, etc. Thus, neither the Complaint nor Defendant's Declaration provide a reasonable basis to support Defendant's assumed violation rates.

    The second, over-arching problem with Defendant's amount in controversy calculations is its assumption that all potential members of the class/sub-class should be included in the calculation. For example, Defendant assumes that, because 98 of its insurance adjuster employees were terminated between October 7, 2019 and November 11, 2022,[2] Plaintiff's claim for failure to timely pay wages upon separation from employment applies to all 98 former employees, especially given Defendant's prior argument that all insurance adjuster employees were uncompensated for at least one hour of overtime work per week. (Docket No. 13 at p. 13.) Using this assumption, Defendant calculates $1,045,389.85 as the amount in controversy for this claim. Defendant makes similar assumptions for Plaintiff's failure to timely pay wages during employment claim and inaccurate wage statements claim to come up with $741,662.36 and $203,300 for the amounts in controversy related to each of those claims.

    Similarly, to support Defendant's alleged amount of Plaintiff's unreimbursed business expenses claim, Defendant cites to Plaintiff's allegation that he seeks reimbursement for business expenses for himself and "all current and former employees employed by Defendant in California, at any time from four (4) years prior to the filing of the initial Complaint in this action through [class certification] who worked remotely and who did not receive

---

inference[s]' about the most important variables involved in the necessary calculations."); Koreisz v. On Q Fin'l Inc., 18-cv-08662, 2018 WL 6567694, at *3 (C.D. Cal. Dec. 12, 2018) ("Perhaps as a tacit acknowledgment that using 100% would not be reasonable [given a 'pattern and practice' allegation,] On Q Financial assumes a 50% violation rate. But neither of Ms. Spertina's declarations nor On Q Financial's Opposition offers any reason 'grounded in real evidence' as to why a 50% violation rate is appropriate.").

[2]    This is the time period Plaintiff defined for the sub-class for the failure to timely pay wages upon separation of employment claim. (See Docket No. 1-2 ¶ 44(H).)

JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES - GENERAL

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

indemnification to reimburse them for the necessary expenditures . . . ." (Docket No. 1-2 ¶ 44(E).) Defendant says it uses a "conservative" number of sub-class members – the 228 insurance adjusters that were employed by Defendant during the aforementioned time period – and assumes that all 228 people expended $5.00 per week for which they were entitled to reimbursement. Using this unsupported estimate of $5.00,[3] Defendant then calculates the amount in controversy related to this claim as $97,098.95.

Defendant offers no reason "grounded in real evidence" as to why these violation rates for Plaintiff's claims are appropriate. See Ibarra, 775 F.3d at 1197, 1199 (stating that "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions," and that "those assumptions cannot be pulled from thin air" and "need some reasonable ground underlying them"); see also Akana, 2019 WL 2225231, at *6 ("[S]ome factual basis is required once the amount in controversy has been contested. As in Ibarra, Defendants 'relied on an assumption about the rate of its alleged labor law violations that was not grounded in real evidence,' despite having the burden of proof as to the amount in controversy."); Weston v. Helmerich & Payne Int'l Drilling Co., No. 1:13-cv-01092-LJO-JLT, 2013 WL 5274283, at *6 (E.D. Cal. Sept. 17, 2013) ("Defendant is not obligated to prove Plaintiff's case . . . [but] there are methods of determining a reasoned basis for the calculations such as random sampling and . . . using actual numbers . . . or, at a minimum, explaining why Defendant's methodology and assumptions make sense.").

The third problem is with amount attributed to Plaintiff's claim for failure to timely pay wages. When Defendant calculates the amount in controversy related to that claim, Defendant relies on its previously assumed amount in controversy for Plaintiff's unpaid overtime wages claim – which this Court has already identified as unreasonable. (See supra.) Specifically, Defendant argues:

> [P]ursuant to Plaintiff's allegations, Plaintiff has placed over $741,662.36 in controversy in connection with his California Labor Code sections 204 and 210 claim (($100 for the first pay period x 134 Putative Section 210 Penalties Sub-Class Members) + ($200 for each subsequent pay period x 1,966 subsequent pay periods worked by the Putative Section 210 Penalties Sub-Class Members) +

---

[3] Similar to how Defendant assumed one hour of unpaid overtime per week, one missed meal period, and one missed rest period, Defendant arbitrarily decides that $5.00 is the appropriate amount for this calculation but provides no supporting evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

($335,062.36, <u>which is twenty-five percent (25%) of the amount in controversy for Plaintiff's unpaid overtime wages claim</u>, assuming only one hour of unpaid overtime per week)).

(Docket No. 13 at pp. 16–17) (emphasis added). Defendant cannot base one calculation on another calculation that was flawed by unreasonable assumptions.

     Finally, Plaintiff also seeks an award of attorney fees. (<u>See</u> Docket No. 1-2 at pp. 30–32.) Defendant argues that "for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorneys' fees valued at approximately twenty-five percent of the projected damages." (Docket No. 13 at p. 18 (internal quotations omitted).) Using this 25% metric, Defendant calculates the attorneys fees Plaintiff seeks as $1,303,674.96 based on their aforementioned, albeit unreasonably assumed, projected damages. (<u>Id.</u> at p. 19.) To support their argument, Defendant cites to several cases for support of a 25% or higher attorney fee, but makes no attempt to analogize the facts or circumstances of those cases to this one. Without more, these cases do not support Defendant's allegations as to the appropriate amount of attorneys' fees that may be at issue in this case. See, e.g., <u>Serran v. Pac. Coast Feather Cushion Co.</u>, No. CV 17-4414-DMG (JEMx), 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) ("Defendants attempt to satisfy their burden by citing cases that supposedly had 'allegations similar to this one' . . . [but] Defendants do not compare the allegations and circumstances of those cases with those of the instant matter. Thus, Defendants' citation to these cases does not satisfy their burden of showing the amount in controversy through evidence and argument." (citation omitted)).

     Moreover, Defendant has failed to meet its evidentiary burden regarding attorneys' fees for purposes of removal because, as noted above, Defendant's calculations of the class recovery are not adequately supported. See, e.g., <u>Garibay v. Archstone Communities LLC</u>, 539 F. App'x 763, 764 (9th Cir. 2013) (defendant's reliance on 25% benchmark failed because it had "not established by a preponderance of the evidence that the underlying amount upon which those fees would be based [was] at least $4 million, as would be required to meet the $5 million minimum"); <u>Armstrong v. Ruan Transport Co.</u>, 16-cv-1143, 2016 WL 6267931, at *7 (C.D. Cal. Oct. 25, 2016) ("Defendant's fee estimate is based on a conjectural damages calculation and should be disregarded."); <u>Campbell v. Vitran Express, Inc.</u>, 10-CV-04442, 2010 WL 3971944, at *4 (C.D. Cal. Aug. 16, 2010) ("[B]ecause such uncertainty surrounds Defendant's calculation of

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES - GENERAL

| Case No. | CV 22-8451 PA (ASx) | Date | December 27, 2022 |
|---|---|---|---|
| Title | Alejandro Javier Cervantes-Arnold, et al., v. AmTrust Financial Services, Inc. | | |

damages and penalties, the Court cannot find that the inclusion of a 25% attorneys' fee, which Defendant recommends, would necessarily place the amount in controversy over the $5,000,000 CAFA threshold.").

Overall, Defendant has not provided a rational or reasonable basis to support the assumptions it makes regarding the amount in controversy. For all the aforementioned reasons, Defendant has failed to satisfy its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000, as required for subject matter jurisdiction under CAFA. This action is hereby remanded to the Los Angeles County Superior Court, Case No. 22STCV33034, for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c).

IT IS SO ORDERED.